**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DONRUDY LOISEAU, QUINTON L. HEBRON and DWAYNE SMALL, individually and, on behalf of all others similarly situated, | |
| Plaintiffs, | CIVIL ACTION NO. 3:22CV01485(JCH) |
| v. | |
| BOZZUTO'S INC., JAMES JONES, CHUCK CERRETA and JOEL SANTIAGO | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION FOR RELIEF ORDERING DEFENDANTS' TRIAL PLAN AND EXTENDING DEADLINES FOR SUBMISSION OF DEFENDANTS' EXHIBIT AND WITNESS LIST TO REFLECT OPT-OUTS**

i

**TABLE OF CONTENTS**

A.   No Trial Plan Is Necessary ........................................................................................ 1

B.   Plaintiffs' Proposed Trial Plan................................................................................... 5

C.   Bozzuto's Trial Plan is Unnecessarily Complicated and Should be Rejected................ 7

   1.   Bozzuto's Assertions About Punitive Damages are Misguided ................................ 7

   2.   Bozzuto's Assertion that the Named Plaintiffs Must Reestablish Adequacy for the Case to Proceed as a Class Action is Similarly Misguided .............................................. 11

   3.   The Court Can Resolve the Class Disparate Impact Claim Following the Jury's Finding of a Pattern or Practice ...................................................................................... 12

   4.   Bozzuto's Argument Regarding Attorneys' Fees Should be Disregarded ............... 13

## TABLE OF AUTHORITIES

**Cases**

*Alila-Katita v. United States Bank Nat'l Ass'n*, No. 16-cv-03950, 2017 U.S. Dist. LEXIS 239809 (N.D. Cal. May 2, 2017) ...................................................................................... 3

*Allison v. Citgo Petroleum Corp*, 151 F.3d 402 (5th Cir. 1998)...................................................... 9

*Baricuatro v. Indus. Pers. & Mgmt. Servs.*, No. 11-2777, 2013 U.S. Dist. LEXIS 163821 (E.D. La. Nov. 18, 2013) .................................................................................... 4

*Binta B. v. Gordon*, 710 F.3d 608 (6th Cir. 2013) ......................................................... 11

*Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) ......................................... 6

*E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824 (7th Cir. 2013)................................................... 8

*EEOC v. Cintas Corp.*, No. 04 Civ. 40132, 2015 U.S. Dist. LEXIS 55889 (E.D. Mich. Apr. 29, 2015) ........................................................................................ 8

*EEOC v. Outback Steak House of Fla., Inc.*, 576 F. Supp. 2d 1202 (D. Colo. 2008) .................... 7

*EEOC v. Pitre, Inc.*, 908 F. Supp. 2d 1165 (D.N.M 2012)................................................. 7

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012).................................... passim

*Ellis v. Costco Wholesale Corp.*, No. C-04-3341, 2012 U.S. Dist. LEXIS 169894 (N.D. Cal. Nov. 29, 2012) ............................................................................ 4

*Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013)............................................ 3

*Feliciano v. Corelogic Rental Prop. Sols., LLC*, 332 F.R.D. 98 (S.D.N.Y. 2019)........................ 8

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................. 13

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977)........................................... 5, 6, 13

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015)...................................... 7

*King v. Trans World Airlines, Inc.*, 738 F.2d 255 (8th Cir. 1984)................................ 6

*Kloppel v. Homedeliverylink, Inc.*, No. 17-CV-6296, 2020 U.S. Dist. LEXIS 2282 (W.D.N.Y. Jan. 3, 2020).......................................................................... 2

*Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200 (11th Cir. 2003) ........................... 10

*O'Hailpin v. Hawaiian Airlines Inc.*, No. 22-00532, 2023 U.S. Dist. LEXIS 220734 (D. Haw. Dec. 12, 2023) .................................................................................................................. 4

*Palmer v. Cognizant Tech. Sols. Corp.*, No. CV 17-6848, 2022 U.S. Dist. LEXIS 198737 (C.D. Cal. Oct. 27, 2022) ................................................................................................ 2, 8, 9

*Palmer v. Cognizant Tech. Sols. Corp.*, No. CV 17-6848, 2025 U.S. Dist. LEXIS 252049 (C.D. Cal. Dec. 5, 2025) ................................................................................................... 2, 11

*Philip Morris USA v. Williams*, 549 U.S. 346 (2007) .................................................................. 10

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) ..................... 5, 11, 12

*Rollins v. Traylor Bros.*, No. C14-1414, 2016 U.S. Dist. LEXIS 7294 (W.D. Wash. Jan. 21, 2016) ..................................................................................................................... 8, 10

*Sosna v. Iowa*, 419 U.S. 393 (1975) ........................................................................................ 11

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ............................................. 9

*Tipton v. Csx Transp., Inc.*, No. 3:15-CV-311, 2017 U.S. Dist. LEXIS 169691 (E.D. Tenn. Oct. 13, 2017) ...................................................................................................................... 3

*Tschudy v. J.C. Penney Corp.*, No. 11cv1011, 2015 U.S. Dist. LEXIS 115652 (S.D. Cal. Aug. 28, 2015) ..................................................................................................................... 3

*United States v. Chicago*, 853 F.2d 572 (7th Cir. 1988) .............................................................. 6

*Van v. Ford Motor Co.*, 332 F.R.D. 249 (N.D. Ill. 2019) ............................................................. 4

*Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 9194, 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010) ................................................................................................................. 5

*Westfall v. Ball Metal Bev. Container Corp.*, No. 2:16-cv-02632, 2019 U.S. Dist. LEXIS 71971 (E.D. Cal. Apr. 29, 2019) ................................................................................................. 3

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................................... 2

Defendants' ("Bozzuto's'") Motion for Relief Ordering Defendants' Trial Plan (Dkt. 242) should be denied.[1] As an initial matter, while Bozzuto's presents its motion as one seeking an order entering its proposed trial plan, elsewhere in its supporting memorandum, Bozzuto's argues that Plaintiffs "should be required to present a manageable trial plan." Mem. at 7 (Dkt. 242-1). It is therefore not clear whether Bozzuto's is asking the Court to enter Bozzuto's trial plan or to enter an order requiring the parties to submit further briefing on the Phase One and Phase Two proceedings, but either way, the relief Bozzuto's seeks is unnecessary at this juncture. The Court has already recognized that this case will proceed under the bifurcated *Teamsters* framework, the parties are submitting competing proposals for the Phase One trial in their Joint Pretrial Memorandum, and it is not necessary at this time to lay out a detailed plan for proceedings beyond Phase One. However, should the Court decide to order a trial plan, Plaintiffs request that the Court enter Plaintiffs' proposal (set forth herein and in the parties' forthcoming Joint Pretrial Memorandum) and reject Bozzuto's proposal, or, in the alternative, allow further briefing.

A.      **No Trial Plan Is Necessary**

The Court has recognized that this case will proceed under the *Teamsters* bifurcated framework, under which "the parties would first litigate Bozzuto's classwide liability" and "[i]f liability is established on a classwide basis, then a second phase commences to establish the scope of individual relief to which each class member is entitled." Dkt. 188 at 19.

The Court has further acknowledged that the exact contours of Phase Two are, at this point, unclear. Dkt. 253 ("[T]he extent of participation necessary for the second stage of the trial cannot be determined ex ante. How class members obtain relief, including whether class members will

---

[1] Bozzuto's motion requested other forms of relief, including the ability to supplement exhibit and witness lists to reflect opt-outs, which have now been mooted. Dkt. 246.

proffer evidence as to individual claims, is uncertain."). Other courts have similarly not required the procedures for Phase Two to be worked out prior to the conclusion of the Phase One trial (i.e., after liability is established). *See* Order, Dkt, 526, *Palmer v. Cognizant Tech. Sols. Corp.*, No. CV 17-6848 (May 23, 2023 C.D. Cal.) (denying Cognizant's pretrial request "for leave to provide briefing on the procedure for Phase Two of the *Teamsters* framework before trial of Phase One commences").[2]

It makes sense to wait until the Phase One trial has concluded to decide Phase Two's parameters because what happens in Phase One will inform what should happen in Phase Two. If the jury finds that Bozzuto's did not engage in a pattern or practice of discrimination, for example, the class-wide inquiry will end. Conversely, if the jury finds that Bozzuto's did engage in a pattern or practice of discrimination, then Phase Two will need to be fashioned so that class members' claims and damages are efficiently determined.[3] Moreover, Bozzuto's may decide to settle or mediate following a jury finding, again obviating the need for the parties and Court to fashion a plan for subsequent hearings and/or trials.

Accordingly, briefing on the trial plan for Phase Two is both premature and unnecessary, and the parties are already providing proposals for the upcoming Phase One trial. As required by

---

[2] *See also Palmer v. Cognizant Tech. Sols. Corp.*, No. CV 17-6848, 2022 U.S. Dist. LEXIS 198737, at *107 (C.D. Cal. Oct. 27, 2022) (granting class certification, and stating that "[t]he Court is confident that, together with the parties, it will be able to establish a workable plan for resolving Phase Two of Plaintiffs' claims, should they survive Phase One"); *Palmer v. Cognizant Tech. Sols. Corp.*, No. CV 17-6848, 2025 U.S. Dist. LEXIS 252049, at *20 (C.D. Cal. Dec. 5, 2025) (following the court's disparate impact finding, ordering the parties to "file a stipulation and proposed order regarding the conduct of Phase Two proceedings or, if there is no agreement, a proposed motion briefing schedule for the Court to resolve the manner in which Phase Two will proceed").

[3] Similarly, if the jury determines in Phase One that punitive damages are not warranted, then questions about punitive damages will not be relevant in Phase Two.

the Court, the parties are setting forth in their Joint Pretrial Memorandum (due on April 3) "the claims that will be pursued at trial," the "relief sought," which claims will be tried to the Court and jury, and an estimation for the length of trial. Dkt. 40 at 4-5. That submission will sufficiently apprise the Court of the parties' proposals for the Phase One trial, and any related issues, including issues that will impact Phase Two.

Rule 23 does not require Plaintiffs to submit a trial plan for Phase One or subsequent proceedings. *See Kloppel v. Homedeliverylink, Inc.*, No. 17-CV-6296, 2020 U.S. Dist. LEXIS 2282, at *11 (W.D.N.Y. Jan. 3, 2020) ("Federal Rule of Civil Procedure 23 does not require Plaintiffs to provide a trial plan to Defendant"). Bozzuto's does not claim otherwise, but purports to cite "ample" authority in which courts have nevertheless required parties to propose trial plans. However, the vast majority of the cases cited by Bozzuto's did not involve employment discrimination claims proceeding under the well-established *Teamsters* framework, and largely involved situations in which the court sought a plan for a trial that was on the horizon—not proceedings that would follow in the wake of that trial. *See Alila-Katita v. United States Bank Nat'l Ass'n*, No. 16-cv-03950, 2017 U.S. Dist. LEXIS 239809, at *20 (N.D. Cal. May 2, 2017) (wage and hour litigation, and not a class action); *Westfall v. Ball Metal Bev. Container Corp.*, No. 2:16-cv-02632, 2019 U.S. Dist. LEXIS 71971, at *2 (E.D. Cal. Apr. 29, 2019) (wage and hour class action, and concerning a trial plan for the use of sampling at trial—not for subsequent proceedings); *Tipton v. Csx Transp., Inc.*, No. 3:15-CV-311, 2017 U.S. Dist. LEXIS 169691, at *24 (E.D. Tenn. Oct. 13, 2017) (recognizing that parties would need time to "develop a trial plan and determine the manner in which the various related cases will be tried" following denial of class certification in case with negligence and other claims). In *Espenscheid v. DirectSat USA, LLC*, the court decertified a class after the judge suggested bifurcating the trial and dividing the

3

class into subclasses and the plaintiffs "truculently" opposed bifurcation but "refuse[d] to suggest a feasible alternative." 705 F.3d 770, 775-76 (7th Cir. 2013). Here, proceedings are already being bifurcated under the *Teamsters* framework, and, unlike in *Espenscheid*, nothing further is required for the Phase One trial to proceed.

Bozzuto's also cites decisions denying class certification, but Bozzuto's failed to raise the argument that a trial plan was required for certification at the class certification stage,[4] and regardless, the cases Bozzuto's cites are distinguishable. *See O'Hailpin v. Hawaiian Airlines Inc.*, No. 22-00532, 2023 U.S. Dist. LEXIS 220734, at *40-41 (D. Haw. Dec. 12, 2023) (denying class certification where the requirements for certification were not met due to threshold individualized issues that would arise during the class liability proceeding (i.e. Phase One));[5] *Van v. Ford Motor Co.*, 332 F.R.D. 249, 290 (N.D. Ill. 2019) (denying class certification, primarily based on a lack of commonality where liability could not be determined class-wide); *Baricuatro v. Indus. Pers. & Mgmt. Servs.*, No. 11-2777, 2013 U.S. Dist. LEXIS 163821, at *30 (E.D. La. Nov. 18, 2013) (non-*Teamsters* class action in which a liability finding would require answering many "individualized questions" that would "predominate over the common questions").

---

[4] *Cf. Tschudy v. J.C. Penney Corp.*, No. 11cv1011, 2015 U.S. Dist. LEXIS 115652, at *20-21 (S.D. Cal. Aug. 28, 2015) ("JCP proposes that Plaintiffs should be required to prepare a trial plan showing that this case can be litigated as a class action. However, JCP did not mention the need for a trial plan at class certification, and the Federal Rules . . . do not require one").

[5] While the plaintiffs in *O'Hailpin* sought to proceed under the *Teamsters* framework, the nature of their claims was distinct. Under the ADA, the plaintiffs have to prove that they are "qualified" as part of their *prima facie* case, which is a threshold individualized issue that is not present here. While the plaintiffs also had a religious discrimination claim under Title VII, their theory, and the class definition, presented a similar problem because each class member would have had to make a showing that they objected to the vaccine based on a "sincerely held religious belief," which, again, is also a threshold individualized issue.

Finally, while the court in *Ellis v. Costco Wholesale Corp.* put in place a "tentative trial plan," the plan for Phase One contained no more detail than Plaintiffs will be providing in the parties' Joint Pretrial Memorandum, and the plan for Phase Two was vague and subject to change as the case progressed—calling for "[i]ndividual hearings" with little elaboration. 285 F.R.D. 492, 545-46 (N.D. Cal. 2012). The court in *Ellis* also recognized in litigating class notice that "while individual hearings will likely be required, the scope of these hearings is not yet known," including "the extent to which any particular class member would be required to participate in an individualized hearing in order to receive relief." *Ellis v. Costco Wholesale Corp.*, No. C-04-3341, 2012 U.S. Dist. LEXIS 169894, at *2-3 (N.D. Cal. Nov. 29, 2012).

Accordingly, no formal trial plan beyond what is being proposed in the Joint Pretrial Memorandum is necessary. Should the Court want to put in place a formal plan for Phase Two in advance of the Phase One Trial, Plaintiffs respectfully request the opportunity to provide briefing on their proposal.

**B.**     **Plaintiffs' Proposed Trial Plan**

If the Court is inclined to order a trial plan, it should be limited to Phase One, and Plaintiffs propose the following structure.

Plaintiffs propose that at the forthcoming Phase One trial, the following claims be tried:

- ***Class Wide Disparate Treatment Claims***:  On behalf of a Class, Plaintiffs will try whether Bozzuto's engaged in a pattern or practice of race discrimination in pay, promotions, job positions, discipline, and/or its termination decisions in violation of 42 U.S.C. §1981 and Title VII[6] and, if so, whether punitive damages in the case are appropriate.

---

[6] In its submission, Bozzuto's proposed precise language that will be posed to the jury to enable a finding of a pattern or practice of discrimination, Mem. at 9, but Plaintiffs contend that the exact phrasing is more appropriately addressed in connection with the parties' proposed jury instructions and verdict form.

  o Upon this finding, the Court can order appropriate injunctive relief.[7]

- ***Resolution of Class Disparate Treatment Claims for Named Plaintiffs***: Plaintiffs propose that if the jury finds that Bozzuto's engaged in a pattern or practice of discrimination, for the sake of efficiency, the Court then complete the remedial phase for the Named Plaintiffs only.[8] Accordingly, at the same proceeding, the jury will determine Bozzuto's liability and damages to the Named Plaintiffs in connection with that pattern or practice.
  - o With respect to the Named Plaintiffs, the jury will be asked to determine if Bozzuto's proved by clear and convincing evidence that it would not have offered better pay, work assignments, or promotions, or would have disciplined or terminated the Named Plaintiffs even if it had not made a regular practice of racial discrimination.[9] If Bozzuto's does not carry that burden, the jury will be asked to assess damages for the Named Plaintiffs.

---

[7] *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361 (1977) ("a court's finding of a pattern or practice [of discrimination] justifies an award of prospective relief[, which] . . . might take the form of an injunctive order against continuation of the discriminatory practice, an order that the employer keep records of its future employment decisions and file periodic reports with the court, or any other order 'necessary to ensure the full enjoyment of the rights' protected by Title VII."); *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001) ("[s]hould the Class Plaintiffs prevail at the liability stage of the pattern-or-practice claim, the court can order class-wide injunctive relief and proceed to the remedial phase.").

[8] *See Ellis*, 285 F.R.D. at 545-46 (approving plan in which, in Phase I, jury decides "[w]hether [defendant] is liable to the Named Plaintiffs for gender discrimination and, if so, in what amount"); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 9194, 2010 U.S. Dist. LEXIS 125945, at *3, 10-11 (S.D.N.Y. Nov. 30, 2010) (describing seven-week trial in which jury heard testimony from witnesses and experts regarding class liability issues, and also received testimony from 12 plaintiffs and/or class members regarding their personal experiences, and, at conclusion, jury returned finding that that Novartis discriminated against class, found for the plaintiffs/testifying witnesses on their class claims, and awarded damages to the plaintiffs/testifying witnesses).

[9] *Teamsters*, 431 U.S. at 362 ("The proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy."). Bozzuto's wrongly suggests that the Named Plaintiffs (and later, the class members) will carry the burden of proof and that Bozzuto's need only offer "legitimate, non-discriminatory reasons justifying the challenged employment action." Mem. at 10. That is not the standard once a pattern or practice of discrimination has been established. *See King v. Trans World Airlines, Inc.*, 738 F.2d 255, 257-58 (8th Cir. 1984) ("if a job applicant proved unlawful discrimination in the hiring process, then the employer would be entitled to prove by clear and convincing evidence that the job applicant would not have been hired anyway"); *United States v. Chicago*, 853 F.2d 572, 575 (7th Cir. 1988) ("The employer must provide clear and convincing evidence to meet its burden."); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1559 (11th Cir. 1986) ("The employer may overcome this presumption only with clear and convincing evidence….").

- ***Class-Wide Disparate Impact Claims***:  On behalf of a Class, Plaintiffs will try to the Court whether Bozzuto's six-month performance review system and Bozzuto's Bid Policy had a disparate impact on Plaintiffs and the Class in violation of Title VII. Dkt. 188 at 63.

- ***Resolution of Class Disparate Impact Claims for Named Plaintiffs***: If the Court finds that Bozzuto's six-month performance review system and/or its Bid Policy had a disparate impact, the Court will be asked to determine if the Named Plaintiffs are entitled to damages and, if so, the amount.

- ***Individual Claims of Named Plaintiffs***: For the sake of efficiency, Plaintiffs propose that the jury decide all individual claims brought by the Named Plaintiffs against Bozzuto's and the three individual Defendants, Messrs. Jones, Cerreta, and Santiago at the same proceeding

Plaintiffs propose that the remedial phase for absent class members will be determined at a subsequent proceeding or proceedings (i.e., Phase Two). Plaintiffs propose that the form of these proceedings be determined after there is a finding as to liability and entitlement to punitive damages. There will be numerous options available including, e.g., settlement, alternative dispute resolution mechanisms, appointing a magistrate to oversee individual or trials, or allowing class members to individually pursue remedial claims with the benefit of a rebuttable presumption. There is no requirement that the contours of Phase Two be established prior to the commencement of Phase One, or, as Bozzuto's argues, that it be tried to the same jury that found a pattern or practice of discrimination.

**C.    Bozzuto's Trial Plan is Unnecessarily Complicated and Should be Rejected**

**1.    Bozzuto's Assertions About Punitive Damages are Misguided**

As set forth above, Plaintiffs propose that the Phase One jury that determines whether Bozzuto's engaged in a pattern or practice of discrimination under Title VII and Section 1981 also decide whether punitive damages should be available to the class. Allowing the Phase One jury to decide the *entitlement* to punitive damages for the class without determining the total amount to be awarded to the class comports with the Second Circuit's caution in *Johnson* that juries should not decide the amount or ratio of punitive damages prior to the compensatory

damages determination, which in this case will occur for the class members in Phase Two. *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 148-49 (2d Cir. 2015).

The Phase One jury will be best positioned to decide whether punitive damages should be available because the "evidence required to establish liability for punitive damages significantly overlaps with the evidence necessary to prove a pattern or practice of discrimination." *EEOC v. Outback Steak House of Fla., Inc.*, 576 F. Supp. 2d 1202, 1206 (D. Colo. 2008); *Ellis*, 285 F.R.D. at 543 ("given the nature of Plaintiffs' claims alleging a pattern or practice of discrimination, the punitive damages inquiry necessarily focuses on Defendant's conduct with respect to the class as a whole, rather than any individual employment decisions with respect to specific employees"); *EEOC v. Pitre, Inc.*, 908 F. Supp. 2d 1165, 1178 (D.N.M 2012) ("[P]unitive damages focus on the conduct of the defendant and are intended to punish and deter [it] from committing future violations."). Plaintiffs' proposed approach "take[s] advantage of the bifurcated trial procedure while safeguarding Defendant[s'] right to ensure that any punitive damages award remains tethered to the compensatory damages actually awarded in Stage Two." *Ellis*, 285 F.R.D. at 543.

Courts regularly allow juries to decide whether punitive damages *will be available* at the same time they decide whether there is a pattern or practice of discrimination in a *Teamsters'* class action, as Plaintiffs propose here. *See, e.g.*, *Palmer*, 2022 U.S. Dist. LEXIS 198737, at *96 (certifying class as to, *inter alia*, the "availability of punitive damages" in Phase One of *Teamsters* action, with amounts to be decided in Phase Two); *Ellis*, 285 F.R.D. at 542 (collecting cases and certifying question of availability of punitive damages for consideration during Phase One of *Teamsters* action, but deferring amount of punitive damages until Phase Two); *Rollins v. Traylor Bros.*, No. C14-1414, 2016 U.S. Dist. LEXIS 7294, at *54 (W.D. Wash. Jan. 21, 2016) (certifying "the availability of punitive damages for classwide determination" where "there is a classwide

issue as to whether Defendants intentionally discriminated against Plaintiffs" and "[t]he related issue of whether Defendants did so with malice or reckless indifference similarly applies to the entire class"); *EEOC v. Cintas Corp.*, No. 04 Civ. 40132, 2015 U.S. Dist. LEXIS 55889, at \*4-5 (E.D. Mich. Apr. 29, 2015) ("[W]hile the availability of punitive damages shall be adjudicated at the Phase I Trial, any determination of the aggregate amount and individual distribution of punitive damages shall be reserved for the Phase II Trial"); *Feliciano v. Corelogic Rental Prop. Sols., LLC*, 332 F.R.D. 98, 106-07 (S.D.N.Y. 2019) (finding question of "the possible award of punitive damages" common and certifying class); *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 834-40 (7th Cir. 2013) (evaluating first whether an aggrieved party had established entitlement to punitive damages under *Kolstad* before considering whether amount of punitive damages comported with due process under *State Farm*).

Bozzuto's cites cases that have nothing to do with whether a jury can assess *the availability* of punitive damages at this phase of proceedings. *Allison* and *State Farm* merely stand for the proposition that the amount of punitive damages awarded to a plaintiff (or class member) must bear some relationship to that plaintiff's (or class member's) recovery of other damages. *See Allison v. Citgo Petroleum Corp*, 151 F.3d 402, 417-18 (5th Cir. 1998) (stating that a class member's punitive damages turn on his or her recovery of compensatory damages and therefore must be determined "at the second stage of a pattern or practice case"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003) (requiring, in a single plaintiff case, that punitive damages be "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered" by that plaintiff).[10]

---

[10] *See also Palmer*, 2022 U.S. Dist. LEXIS 198737, at \*97-98 ("While Cognizant is correct that the question of the *amount* of punitive damages requires factfinders to consider the impacts of

Bozzuto's argues below that punitive damages cannot be addressed until after "final resolution of the disparate treatment claims," by which Bozzuto's has indicated that it means until after liability for *every class member* has been resolved, but that also is not necessary.[11] *Allison* and *State Farm* merely stand for the proposition that the amount of punitive damages awarded to a plaintiff (or a class member) must bear some relationship to *that* plaintiff's (or class member's) recovery of other damages. *Allison*, 151 F.3d at 417-18; *State Farm*, 538 U.S. at 426. Plaintiffs are not seeking a class-wide punitive damages award in Phase One, and nothing in those holdings would prevent the jury from awarding a Named Plaintiff or class member damages prior to deciding Bozzuto's liability as to *all* class members. The amount given to an individual Named Plaintiff or class member will be based on Bozzuto's having engaged in a pattern or practice of discrimination with malice, the impact of Bozzuto's conduct on that individual, as well as the amount of other damages awarded to that individual, and will not hinge on whether Bozzuto's is liable for discrimination against other class members. Therefore, there is no reason that due process would require Bozzuto's liability to all class members to have been decided before a Named Plaintiff or class member is awarded punitive damages.

Bozzuto's cites *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007), which states that due process prevents a court from "award[ing]" punitive damages unless a defendant has "an opportunity to present every available defense." But in Phase One, Bozzuto's "'will be able to

---

a defendant's actions upon the plaintiff, Plaintiffs do not seek certification of the issue of the amount of punitive damages, only whether Cognizant's conduct justifies the imposition of punitive damages under Title VII at all") (citing *State Farm*, 538 U.S. at 423).

[11] Notably, under Bozzuto's proposal, the same jury that determined liability for a pattern or practice of discrimination would oversee the remedial phase for the claims of each class member, and then, only once all claims have been resolved, would decide whether each Named Plaintiff and class member is entitled to punitive damages and if so, the amounts. Such a proceeding is neither workable nor necessary, and the cases Bozzuto's cites do not say otherwise.

present defenses to . . . the availability of punitive damages,'" and "[i]f Plaintiffs prevail, [Phase] Two 'offer[s] Defendant[] the opportunity to present evidence as to the proper amount of punitive damages as well as individualized defenses which could defeat any individual class member's claim to punitive [damages].'" *Rollins*, 2016 U.S. Dist. LEXIS 7294, at *57-58 (quoting *Ellis*, 285 F.R.D. at 543).

### 2.    Bozzuto's Assertion that the Named Plaintiffs Must Reestablish Adequacy for the Case to Proceed as a Class Action is Similarly Misguided

Bozzuto's erroneously states that, following a finding of a pattern or practice of discrimination, it is necessary to determine "[l]iability as to Named Plaintiffs [t]o [e[nsure [that the] [r]equirements of Rule 23 [are] [s]atisfied to [p]roceed on [a] [c]lass [b]asis." Mem. at 9. But this case is already proceeding on a class basis, and Plaintiffs are not obligated to try the Named Plaintiffs' claims at any particular point in the litigation to reestablish the requirements of Rule 23, which the Court has already determined have been met.

Bozzuto's appears to suggest that if the Named Plaintiffs were to lose on their class claims, they would no longer be adequate class representatives, such that decertification would be warranted, but that is not necessarily true. *See Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1215-16 (11th Cir. 2003) ("a plaintiff's capacity to act as representative of the class is not ipso facto terminated when he loses his case on the merits"); *Binta B. v. Gordon*, 710 F.3d 608, 619 (6th Cir. 2013) ("a named class representative may still adequately represent the class, for purposes of Rule 23, even if the representative's personal claims have become moot, at least until such time that there is a determination that the representative is no longer adequate"); *Sosna v. Iowa*, 419 U.S. 393, 402-03 (1975) (in examining adequacy post-certification, "the district court

11

must assure itself that the named representative will adequately protect the interests of the class").[12]

### 3. The Court Can Resolve the Class Disparate Impact Claim Following the Jury's Finding of a Pattern or Practice

Bozzuto's suggests that the trial to the Court on the class disparate impact claim cannot occur until after the remedial phase on the class disparate treatment claim is complete, but that is inconsistent with what other courts have done. *See, e.g.*, *Palmer*, 2025 U.S. Dist. LEXIS 252049, at *4 (deciding class disparate impact claim "solely on the basis of the existing trial record and supplemental briefing from the parties" prior to remedial phase). Bozzuto's cites *Robinson*, where the court stated that "[t]rial of the disparate impact claim could . . . be put off until the remedial phase is resolved, thus ensuring that any overlapping factual issues between the two claims will have first been tried to a jury in accordance with the Seventh Amendment." 267 F.3d at 170. But the *Robinson* court distinguished between finding a disparate impact violation and awarding individual disparate impact damages. *Id.* at 161 (explaining that after a finding of disparate impact the court may award class-wide injunctive relief, but "individual relief [for disparate impact requires] an inquiry similar to the remedial stage of a pattern-or-practice disparate treatment claim"). Thus, the language in *Robinson* cited by Bozzuto's means that after a jury and court finding on class-wide disparate treatment and disparate impact claims, any findings on a *class member*'s disparate impact damages claim in the remedial phase would have to follow a jury's finding on that class member's disparate treatment claim.

---

[12] Notably, under Bozzuto's proposal, the Named Plaintiffs would necessarily retain an interest in the outcome of the litigation even if they lost on their class disparate treatment claims, because the class disparate impact claim would still be pending.

Bozzuto's further suggests that it is only at this point that the Court can award injunctive relief, but as *Robinson* acknowledges, injunctive relief is available upon a jury's finding of a pattern or practice. *Id.* at 170 ("Should the Class Plaintiffs prevail at the liability stage of the pattern-or-practice claim, the court can order class-wide injunctive relief and proceed to the remedial phase.").

### 4.    Bozzuto's Argument Regarding Attorneys' Fees Should be Disregarded

Bozzuto's argues that "counsel for Plaintiffs further cannot move for an interim award of attorneys' fees until completion of all three trial stages." But a jury finding of a pattern or practice of discrimination at the Phase One trial will entitle Plaintiffs to interim attorneys' fees. *See* Order at 3, Dkt. 713, *Palmer v. Cognizant Tech. Sols. Corp.*, No. CV 17-6848 (C.D. Cal. Dec. 5, 2025) ("in the limited cases where courts have considered the specific issue of interim fees between Phases I and II of *Teamsters* actions, those courts have all granted interim fees") (collecting cases). This would remain true even if the Court were to adopt Bozzuto's trial plan in its entirety. That said, whether and when Plaintiffs move for attorneys' fees has nothing to do with a trial plan and should not be considered at this point in the proceedings. If and when Plaintiffs move for attorneys' fees, Bozzuto's can argue that an award is improper. .

Bozzuto's argues that Plaintiffs should not be allowed to seek interim fees because Plaintiffs will not have achieved the requisite "degree of success" to warrant a fee award, but the *Palmer* court considered that very same argument and found that the "Plaintiffs' success in Phase I" was sufficient to warrant fees. *Id*. at 4 ("Cognizant attempts to downplay Plaintiffs' success in Phase I by emphasizing the determinations left to be made in Phase II, but these efforts are unavailing. Because of the Phase I verdict, in Phase II, every class member 'will be presumptively entitled to relief,' and 'the force of that proof' prevents Cognizant from 'claim[ing] that there is no reason to believe that its individual employment decisions were discriminatorily based' . . . .

The impact of this is more than just a 'thumb on the scale'—it passes the heavy burden of proof to Defendants.") (citing *Teamsters*, 431 U.S. at 359 n.45). Moreover, "the degree of the plaintiff's overall success goes to the reasonableness of the award," not the availability of the award. *Id*. at 1 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Accordingly, Bozzuto's citations in no way support its argument that Plaintiffs should be precluded from moving for interim fees, and Bozzuto's premature argument regarding interim fees should be ignored.

For the foregoing reasons, Bozzuto's request that the Court enter Bozzuto's trial plan and/or order briefing on Phase Two procedures should be denied.

DATED:  March 31, 2026                    By: /s/ Daniel Kotchen

Daniel A. Kotchen (PHV10213)
Lindsey Grunert (PHV20124)
KOTCHEN & LOW LLP
1918 New Hampshire Avenue NW
Washington, DC 20009
Telephone: (202) 471-1995
Fax: (202) 280-1128
dkotchen@kotchen.com
lgrunert@kotchen.com

Nitor V. Egbarin, ct05114
Law Office of Nitor V. Egbarin, LLC
100 Pearl Street, 14th Floor
Hartford, CT 06103-3007
Tel: (860) 249-7180
Fax: (860) 408-1471
E-mail: NEgbarin@aol.com

*Attorneys for Plaintiffs*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system.


DATED:  March 31, 2026                    By: <u>/s/ Daniel Kotchen</u>

15