**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DONRUDY LOISEAU, QUINTON L. HEBRON and DWAYNE SMALL, individually and, on behalf of all others similarly situated, | |
| Plaintiffs, | CIVIL ACTION NO. 3:22CV01485(VAB) |
| v. | |
| BOZZUTO'S INC., JAMES JONES, CHUCK CERRETA and JOEL SANTIAGO | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR
A SUPPLEMENTAL NOTICE PLAN TO CORRECT PLAINTIFFS' DEFICIENT
CLASS NOTICE**

i

TABLE OF CONTENTS

I.    BACKGROUND ...........................................................................................................3

      A.  Dissemination of Class Notice. ......................................................................3

      B.  The Parties' Conferral Efforts Following the Dissemination of Class Notice. ...............4

II.   LEGAL STANDARD .................................................................................................6

III.  ARGUMENT ..............................................................................................................7

      A.  Plaintiffs Complied with the Court's Order That the Exclusion Request Form Be
      "Electronic" and Transmittable Via Electronic or Physical Mail and Defendants' Belated
      Wish for a Fillable PDF Form Does Not Warrant a Second Notice. .....................................8

      B.  Low Engagement With the Notice Website is Consistent With Class Members' Desire
      to Remain in the Case and Does Not Warrant a Second Notice Via Text Message. ............11

      C.  Defendants' Supplementation of Witness and Exhibit Lists Was Limited to Reflecting
      Opt-Outs. .................................................................................................................13

IV.   CONCLUSION .........................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-3624, 2015 U.S. Dist. LEXIS 90616
    (S.D.N.Y. July 13, 2015).............................................................................................................12

*Brashier v. Quincy Prop., LLC*, No. 3:17-CV-3022 2018 U.S. Dist. LEXIS 68948 (C.D. Ill. Apr.
    24, 2018)......................................................................................................................................12

*Buchanan v. Tata Consultancy Services, Ltd.*, No. 15-CV-01696, 2018 U.S. Dist. LEXIS 122948
    (N.D. Cal. July 23, 2018) ...........................................................................................................10

*Desio v. Russell Rd. Food & Beverage, LLC*, No. 2:15-cv-01440, 2017 U.S. Dist. LEXIS 162609
    (D. Nev. Sept. 29, 2017).............................................................................................................12

*Enger v. Thomas L. Cardella & Assocs.*, No. 20-CV-78, 2001 U.S. Dist. LEXIS 231994 (N.D.
    Iowa Jan. 26, 2021) ......................................................................................................................7

*Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012) .........................................7

*Hines v. Equifax Info. Servs. LLC*, No. 19-CV-6701, 2024 U.S. Dist. LEXIS 217785 (E.D.N.Y.
    Dec. 2, 2024) .................................................................................................................................7

*In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09-MD-2090, 2017 U.S. Dist. LEXIS 29984
    (D. Minn. Mar. 1, 2017) .............................................................................................................10

*Molina-Torres v. Harris Cnty. Constable Precinct 6*, No. 4:23-CV-01786, 2024 U.S. Dist.
    LEXIS 71629 (S.D. Tex. Apr. 19, 2024)....................................................................................12

*Pollard v. Remington Arms Co., LLC,* 896 F.3d 900 (8th Cir. 2018) ...........................................13

*Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019) ....................................................7, 13

*Salma Bahaa Hussein v. Headless Widow LLC*, No. 24-cv-04658, 2024 U.S. Dist. LEXIS
    224991 (S.D.N.Y. Dec. 11, 2024) ................................................................................................7

*Sheinberg v. Sorensen*, No. 00-6041, 2007 U.S. Dist. LEXIS 9544 (D.N.J. Feb. 8, 2007) ............7

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 (C.D. Cal. 2016) ...................................................10

*Walter v. Hughes Comm'ns, Inc.*, No. 09-2136, 2011 U.S. Dist. LEXIS 72290 (N.D. Cal. July 6,
    2011).............................................................................................................................................10

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................................7

Defendants' Motion for a Supplemental Notice Plan to Correct Plaintiffs' Deficient Class Notice (Dkt. 285) is a thinly-veiled attempt to manufacture "deficiencies" with respect to the class notice (where none exist) in order to justify a second notice in the hopes to coerce class members to opt-out of the case. Defendants' motion should be denied.

Defendants bring this motion for one simple, albeit inappropriate reason: Defendants are upset that not a single potential class member (out of 2,445 individuals) opted out of the case, and are hopeful that a second notice (this time via text message) will strong-arm class members into dropping their claims. But it is unsurprising that there was not a single opt-out. Plaintiffs assert that Bozzuto's engages in a pervasive pattern or practice of racial discrimination and have certified a class of Black warehouse employees who were discriminated against by Bozzuto's in pay, positions, promotions, discipline, and termination decisions. *See* Dkt. 188 at 3, 64. Class members in this case have been significantly harmed—both financially and emotionally—and stand to benefit if they remain in this case and Plaintiffs prevail at the Phase One trial.

Defendants' motion is premised, in part, on the fact that Plaintiffs mailed a postcard notice, directing 786 of the 2,445 potential class members to the case website where the long-form notice and Exclusion Request form were located, rather than sending them the 8-page court-approved notice form. While Plaintiffs dispute Defendants' contention that the postcard notice was improper, to moot any dispute, Plaintiffs have agreed to mail the 8-page notice form to those 786 individuals who received the postcard notice and to afford them an additional thirty days to opt-out of the case. The parties' entered into a Joint Stipulation memorializing this agreement on June 11, 2026 (Dkt. 284), such that there is no dispute over the mailed notice that would warrant a second notice via text message.

Defendants also claim that Plaintiffs violated the Court-approved notice plan by having the notice administrator, A.B. Data, post a PDF Exclusion Request form on the notice website that was not fillable. But the Court's Order *contained no requirement* that the Exclusion Request form be a fillable PDF. Rather, the Court rejected Defendants' request for an opt-out button on the notice website and ordered that the Exclusion Request form be "electronic," leaving "undistributed plaintiffs' proposed opt-out method (transmitting the Exclusion Request form via email or physical mail)." *See* Dkt. 253 at 11, *see also* Dkt. 238-4 at ("Plaintiffs' [Approved] Class Notice Plan" requiring "[a]n Exclusion Request form that may be printed, signed, and mailed or emailed to the Administrator" be posted on the notice website). Plaintiffs complied with the Court's Order,[1] and Defendants' attempt to manufacture a dispute regarding the Exclusion Request form should be rejected.

While Defendants further argue that low engagement with the class notice website warrants a second notice—this time via text message—this is not a case where opt-outs are expected given the gravity of Plaintiffs' allegations. Had Defendants believed that text message notice was warranted, they should have moved for such relief, but chose not to do so. *See* Dkt. 241 (raising no objections to notice via email and mail). Accordingly, because 2,400 of the 2,445 potential class members (98.2%) received notice in this case, and 786 of those same class members will receive a *second* mailed notice shortly, text message notice is unwarranted, as the best notice practicable has already been issued.

Finally, Defendants claim that Plaintiffs refused to stipulate to relief that was already ordered by the Court, i.e., that Defendants be afforded thirty days after any subsequent opt-out

---

[1] Notably, Plaintiffs have agreed, as a courtesy and to avoid burdening the Court, to make the PDF form fillable on the case website, such that the 786 potential class members who are receiving the second mailed notice will have access to a fillable form. *See* Dkt. 284 at 2.

period to "supplement witness and exhibit lists to reflect case developments resulting from the expiration of the opt-out period." Mem. at 3-4 (Dkt. 285-1). But Defendants misstate the relief previously awarded by the Court. Defendants sought "the ability to supplement witness and exhibit lists *to reflect the identity of opt outs*," Dkt. 241 at 19 (emphasis added), not to "reflect case developments arising from the expiration of the opt-out period." The Court granted only the narrow relief requested by Defendants, such that Plaintiffs' refusal to stipulate to broader relief was warranted, and the Court should reject Defendants attempt to now circumvent the Court's Order and to supplement witness and exhibit lists to "reflect case developments."

## I.    BACKGROUND

### A.    Dissemination of Class Notice.

In accordance with the approved class notice form and plan, Plaintiffs' notice administrator, A.B. Data, disseminated class notice to 2,445 potential class members, of whom, 1,659 received notice via email (67.9%) and 786 received notice by mail (32.1%) (either because Defendants lacked a personal email address for these individuals, or the emailed notice bounced). Dkt. 281 at 3. The potential class members who received notice via email received the 8-page notice form approved by the Court, Dkt. 281-1,[2] and those who received notice by mail were sent a shortened postcard version of the long-form notice, which directed class members to the notice website where the long-form notice and Exclusion Request form were available, along with the opt-out deadline. Dkt. 281-2; *see* https://bozzutosclassaction.com/ ("To ask to be excluded, you must act before May 16, 2026 by submitting a completed Exclusion Request Form by mail or email."). The Exclusion Request form on the notice website conformed with the Court's requirement that it be "electronic" such that it could be "transmitted via electronic or physical

---

[2] Minor formatting changes were made due to the limitations of email, e.g., the email did not contain a Table of Contents. *See* Dkt. 238-4 at 2 n.1

mail" to A.B. Data. Dkt. 253 at 11 (containing no requirement that the form be a fillable PDF and rejecting Defendants' request for an opt-out button); Dkt. 238-4 at 1 (Plaintiffs' approved request that on the notice website, there be "[a]n Exclusion Request form that may be printed, signed, and mailed or emailed to the Administrator"). The form was capable of being submitted electronically "from any internet-capable device" as class members simply had to download and complete the form, either by printing and completing it by hand, or using a PDF editor to add text to complete the form electronically. Dkt. 253 at 11.

Notice was disseminated on April 16, 2026, and the thirty-day opt-out period closed on May 16, 2026. Dkt. 281 at 1, 3. During the opt-out period, A.B. Data performed skip tracing for those individuals for whom the mailed notice was returned as undeliverable. *Id*. at 2. In total, 1,659 individuals received the long-form notice via email, 741 received the postcard notice via mail, and 45 individuals did not receive any notice due to the mailed notice being returned as undeliverable (of these 45 individuals, A.B. Data was not able to locate an updated address for 11 individuals, and for the other 34 potential class members, the mailed notice was returned as undeliverable after the opt-out period closed). Dkt. 281 at 3; Defs.' Ex. 3 at 3 (Dkt. 285-5). Overall, 98.2% of all potential class members received notice. Defs.' Ex. 3 at 3 (Dkt. 285-5). There were no opt-outs and no class members objected to the adequacy of the notice plan. *Id.* at 1; Dkt. 281 at 3.

**B.**     **The Parties' Conferral Efforts Following the Dissemination of Class Notice.**

On May 12, 2026, just prior to the expiration of the opt-out period, Defendants asked to be included on email communications with A.B. Data. Defs.' Ex. 2 at 1-2 (Dkt. 285-4). This was the first time Defendants had made such a request, as they had previously only asked to be copied on emails from A.B. Data circulating any completed Exclusion Request forms. Defs.' Ex. 1 at 1-2 (Dkt. 285-3). Plaintiffs readily complied and began including Defendants on communications with A.B. Data. *See id* at 1.; Defs.' Ex. 3 at 8 (Dkt. 285-5). Immediately thereafter, Defendants made a

4

number of detailed requests to A.B. Data (what it refers to as "due diligence questions," Mem. at 2, 5),[3] including for A.B. Data to provide examples of the emailed and mailed notices, the specific dates notices were re-mailed, the number of individuals receiving the re-mailed notice, the identity of those for whom A.B. Data was unable to locate an updated address, a list of individuals who received the postcard notice, analytics for how many downloaded the opt-out form on the website, an explanation of "unique visitors" to the notice website, etc. *Id.* at 1-7. A.B. Data promptly responded to each request. *See id.* As of June 1, 2026, there had been 373 website visits, 403 website page views, and 347 unique website visitors. *Id*. at 1. There were just 11 clicks on the Exclusion Request form (which included clicks by counsel who tested the links). *Id*.; Mem. at 7.

Pursuant to the Court's request, on May 25, 2026, the parties filed a Joint Status Report concerning class notice and opt-outs. Dkt. 281. In that Report, Defendants objected to Plaintiffs' notice process, and argued that the 786 individuals who received the postcard notice by mail should have instead been mailed the 8-page court-approved notice. *Id*. at 3. Plaintiffs responded with their position that postcard notice is common for formatting lengthy class action notices such as the notice form in this case, and noted that the postcard directed class members to the notice website where the full notice and Exclusion Request form was posted. *Id*. Plaintiffs stated that they would be amenable to mailing the long-form notice to class members who received the postcard notice and providing those individuals with an additional thirty days to opt-out of the case. *Id*. at 3-4.

---

[3] While Defendants claim that it was "[t]hrough this process, defense counsel learned that the opt-out form provided on the Notice Website was a non-fillable PDF," *id*. at 7, Defendants had been provided with a link to the notice website before it went live (at Defendants' request), and did not raise any issues with the Exclusion Request form (presumably, because it complied with the Court's approved notice plan). *See* Dkt. 238-4 at 1; Defs.' Ex. 1 at 8 (Dkt. 285-3) ("Here is a link to the website (which is not yet live):").

The parties then met and conferred regarding class notice on June 2, 2026. Maatman Decl. ¶ 10 (Dkt. 285-2); Defs.' Ex. 5 at 1 (Dkt. 285-7). On that call, Defendants asked whether Plaintiffs would be willing to (1) mail the 8-page notice form to the 786 potential class members who received the postcard notice, (2) make the Exclusion Request form on the notice website a fillable PDF, and (3) for a second notice to be disseminated to all 2,445 potential class members via text message. *See* Maatman Decl. ¶¶ 10-11 (Dkt. 285-2); Defs.' Ex. 6 at 1 (Dkt. 285-8). Later that same day, Plaintiffs informed Defendants that they would agree to mail the long-form notice to those who received postcard notice (thereby mooting any dispute as to the mailed notice) and to make the Exclusion Request form a fillable PDF on the notice website (despite no requirement to do so), but declined to re-issue notice via text message, given that very few notices were returned as undeliverable. Defs.' Ex. 6 at 1 (Dkt. 285-8). On June 3, Defendants sent Plaintiffs case law in support of its position that notice should be disseminated via text message "given the high rate of turnover in the warehouse distribution industry," including at Bozzuto's. Defs.' Ex. 7 at 4 (Dkt. 285-9). But each of the cases cited by Defendants (as discussed below) concerned collective action lawsuits where putative class members are required to affirmatively opt-in to participate in the lawsuit, and as Plaintiffs informed Defendants, had Defendants believed that notice should be sent by text message, they should have sought that relief from the Court in the first instance. *Id*.

On June 11, 2026, the parties memorialized their agreement with respect to the mailed notice and fillable PDF Exclusion Request form in a Joint Stipulation. *See* Dkt. 284.

## II.    LEGAL STANDARD

"For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members

6

who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).[4] Courts regularly

approve notice by email, mail, or a combination of both, and in such cases, notice by text message

is unnecessary. *See Hines v. Equifax Info. Servs. LLC*, No. 19-CV-6701, 2024 U.S. Dist. LEXIS

217785, at *12-13 (E.D.N.Y. Dec. 2, 2024) (approving notice plan where subclass members were

to be notified by email "when possible" and otherwise by U.S. mail); *Salma Bahaa Hussein v.*

*Headless Widow LLC*, No. 24-cv-04658, 2024 U.S. Dist. LEXIS 224991, at *18 (S.D.N.Y. Dec.

11, 2024) ("Courts . . . commonly authorize distribution of notice by United States mail and

by email."); *cf. Enger v. Thomas L. Cardella & Assocs.*, No. 20-CV-78, 2001 U.S. Dist. LEXIS

231994, at *19-20 (N.D. Iowa Jan. 26, 2021) (finding notice by text message "simply not

necessary" in an FLSA opt-in collective action where notice was to be disseminated via mail and

email and acknowledging that "notice via text is more invasive than via mail or email and carries

with it less reliability and authority").

### III.   ARGUMENT

Defendants' motion to re-issue notice to all 2,445 potential class members via text message

in an attempt to coerce them to opt-out of the case should be denied. First, Defendants' argument

---

[4] The cases Defendants cite in their "Legal Standard" section where classes were decertified for deficient notice or *res judicata* did not attach to the final resolution, Mem. at 10-11. are wholly inapplicable. *See Sheinberg v. Sorensen*, No. 00-6041, 2007 U.S. Dist. LEXIS 9544, at *1 (D.N.J. Feb. 8, 2007) (class was certified in 2002 and five years later, "plaintiffs' counsel ha[d] not submitted, filed or issued the Court-approved notice to class members required by Rule 23(c)(2)(B)"); *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 220, 224-25 (2d Cir. 2012) (*res judicata* did not bar claim where notice was published in a "single [Monday edition] issue of *USA Today*," "the district court did not determine whether the *Gravina* class members' identities were ascertainable" and the court of appeals was "aware of no case in [the] Circuit holding that a single notice published in a single publication satisfied either due process or Rule 23(b)(3)"); *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1046 & n.7 (9th Cir. 2019) (notice of settlement provided only via mail, objectors (which are absent here) argued that the notice should have been delivered via email, 1/3 of the mailed notices were undeliverable, and response rate was only 18.5%).

that all class members should have "equal access" to an electronically-fillable Exclusion Request form has no basis as the approved class notice plan contained no such requirement and potential class members who received the notice had ample ability to submit the form electronically, as required by the Court. Second, the purported "low engagement" with the notice website does not warrant a second notice given that class members already received the best notice practicable, 98.2% of all potential class received notice via mail or email, and Defendants have identified no authority for text message notice in an opt-out case such as here where notice has already been disseminated through two mediums. Third, Defendants' request that they be afforded thirty days to supplement their witness and exhibit lists should be denied to the extent that Defendants seek to do more than supplement those lists to "reflect opt-outs," which is the only relief that has been granted by the Court.

**A.** **Plaintiffs Complied with the Court's Order That the Exclusion Request Form Be "Electronic" and Transmittable Via Electronic or Physical Mail and Defendants' Belated Wish for a Fillable PDF Form Does Not Warrant a Second Notice.**

Defendants argue that the class notice form should be re-distributed to all class members so that they have "equal access" to a fillable Exclusion Request form (which Plaintiffs have agreed, as a courtesy, to now include on the notice website), but Defendants ignore the fact that the approved class notice plan contained *no requirement* that the PDF be fillable. Mem. at 11-13. Plaintiffs' proposed notice plan provided that the notice website would contain "[a]n Exclusion Request form that may be printed, signed, and mailed or emailed to the Administrator." Dkt. 238-4 at 1. Defendants did not oppose this request, but asked for the inclusion of an opt-out button on the notice website. Dkt. 241 at 1-2, 15-16. The Court rejected Defendants' proposal, "find[ing] that an opt-out button [wa]s unnecessary to fulfill the requirements of Rule 23," and because the proposed Exclusion Request form was "electronic" and could "be done in a few short steps from any internet-capable device," the Court "le[ft] undisturbed plaintiffs' proposed opt-out method

(transmitting the Exclusion Request form via email or physical mail)." Dkt. 253 at 11 (containing no requirement for a fillable PDF Exclusion Request form).

In their proposed Supplemental Notice Plan, Defendants request that class members be permitted to submit the Exclusion Request form directly on the case website. Dkt. 285-10 at 1-2. Concerningly, Defendants do not include any argument to this effect in their brief, presumably because the request is in direct contravention of the Court's prior Order, approving the submission of the Exclusion Request form via email or mail and rejecting Defendants' request for an opt-out button. Dkt. 253 at 11. The Court should continue to reject such broad and unnecessary relief.

Defendants argue that the Exclusion Request form used by Plaintiffs was "burdensome" and required access to a printer and a scanner. Mem. at 8, 12. But that's inaccurate. Class members could complete the form electronically, either by using a PDF editor or by adding text boxes to the document, and even if a class member chose to print and complete the form, a scanner was not required. The class member could simply use their phone to either take a picture of the completed form, or could use a scanner application on their phone to scan and submit the form. Tellingly, just 11 individuals clicked on the Exclusion Request form (including counsel), not a single class member objected to the notice plan or the method for opting-out that was approved by the Court, and no class members opted-out of the case. Accordingly, because the Exclusion Request form available on the notice website was electronic, conformed with the Court's Order, and could easily be downloaded and submitted by potential class members, there is no proper bases for ordering a second notice via text message.

While Defendants claim that "a notice plan that burdens certain class members more than others does not adequately protect the rights of class members," Mem. at 11, as Plaintiffs explained to Defendants, to the extent they want every class members' ability to opt-out to be the same, then

the Exclusion Request form should remain unchanged on the notice website. Defs.' Ex. 7 at 4 (Dkt. 285-9) ("If Defendants want to ensure uniformity, then the opt-out form should remain unchanged, as there was no requirement that the form be fillable.").[5]

The cases cited by Defendants offer no support to their argument that a *second* notice should be distributed simply so that all class members have access to a fillable Exclusion Request form where (1) there was no requirement in the original notice plan for a fillable PDF, (2) Defendants did not seek a fillable Exclusion Request form as part of the notice plan, and (3) the Court explicitly rejected Defendants' request for an opt-out button on the notice website. *See In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09-MD-2090, 2017 U.S. Dist. LEXIS 29984, at *10-12 (D. Minn. Mar. 1, 2017) (including online opt-out form as part of the original notice); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 331 (C.D. Cal. 2016) (allowing class members to opt-out of settlement by submitting form online); *Walter v. Hughes Comm'ns, Inc.*, No. 09-2136, 2011 U.S. Dist. LEXIS 72290, at *37-45 (N.D. Cal. July 6, 2011) (denying motion for preliminary approval of settlement and conditional class certification where plaintiffs failed to satisfy Rule 23, the "proposed claim procedure [was] unreasonable," the submission of a claim form was burdensome, and the claim form itself was problematic). Defendants previously cited *Buchanan v. Tata Consultancy Services, Ltd.*, No. 15-CV-01696, 2018 U.S. Dist. LEXIS 122948, at *3 n.7 (N.D. Cal. July 23, 2018) in support of their request for an opt-out button on the notice website,

---

[5] In a footnote, Defendants reference a separate case in which local counsel, Nitor Egbarin, was sanctioned for, *inter alia*, calling potential opt-ins plaintiffs in an FLSA collective action and providing certain potential opt-ins with the notice and consent form before the opt-in period began. *See* Mem. at 11 n.2 (citing *Aboah v. Fairfield Healthcare Servs. Inc.*, No. 3:20-CV-00763 (SVN), 2023 U.S. Dist. LEXIS 201348, at *21-22 (D. Conn. July 28, 2023)). But this is a Rule 23 class action where a class has been certified (such that the Class is represented by Counsel), and, in any event, the Class is represented by Kotchen & Low LLP. *See* Dkt. 188 at 63 (appointing Kotchen & Low as Class Counsel and Mr. Egbarin as local counsel).

but the Court considered and rejected that request. *Compare* Dkt. 241 at 16 (citing *Buchanan*), *with* Dkt. 253 at 11 ("The court finds that an opt-out button is unnecessary to fulfill the requirements of Rule 23.").

Accordingly, because Defendants have offered nothing but pure speculation that the Court-approved Exclusion Request form "created an undue burden for some [potential class members]," Mem. at 12, which it did not, Defendants' sweeping request that text message notice now be sent to all 2,445 potential class members should be rejected.

**B.      Low Engagement With the Notice Website is Consistent With Class Members' Desire to Remain in the Case and Does Not Warrant a Second Notice Via Text Message.**

Defendants argue that a second notice should be sent via text message given that there was low engagement with the notice website. *Id.* at 13-15. But that is consistent with class members' desire to remain in the case and to have their rights vindicated. 98.2% of the 2,445 potential class members received notice, and no class members opted out of the case or lodged objections to the notice process, which explains why the unique website clicks were low.

While Defendants argue that text message notice is warranted as there is high turnover at Bozzuto's such that the workforce is "transient in nature," *id.* at 13, Defendants have always been aware of this fact and should have initially moved for text message notice, but chose not to do so. Further, notice was emailed to 1,659 potential class members' personal email addresses (67.9% of the potential class) and personal email addresses rarely change, so there is no good reason to issue notice for a second time via text message.[6] Even more unreasonable, Defendants propose that

---

[6] Defendants also ignore the fact that mobile numbers for class members can change over time. Here, the class period dates back to November 21, 2018, so while Defendants have mobile numbers for 78% of the potential class, *id.*, it's highly likely that some of these individuals have since changed numbers (or were forced to give up their phone plan after they were terminated by Bozzuto's).

"[p]otential class members shall receive notice through text message through the mobile number provided, through email if there is no mobile number or the mobile number is a non-working number, and through mail if there is no working mobile number or deliverable email address provided." Dkt. 285-10 at 2. But notice has *already* been distributed via email and mail, and Defendants offer no justification as to why a second notice, through the very same methods, is warranted (which it is not).

Defendants cite four cases in support of their argument that "courts have found that text message notice is appropriate" in industries where "the workforce is transient." Mem. at 13-14. But each of the cases cited by Defendants were FLSA collective action lawsuits where class members must affirmatively opt-in to the case in order to benefit and all are factually distinct from here where notice has already been issued to the class in accordance with the approved notice plan. *See Brashier v. Quincy Prop., LLC*, No. 3:17-CV-3022 2018 U.S. Dist. LEXIS 68948, at *3, 18-19 (C.D. Ill. Apr. 24, 2018) (FLSA collective action where individuals "must affirmatively opt in to the suit," defendants lacked updated addresses for opt-ins, and "the Plaintiffs themselves lived at the motels while they worked for Defendants"); *Desio v. Russell Rd. Food & Beverage, LLC*, No. 2:15-cv-01440, 2017 U.S. Dist. LEXIS 162609, at *14 (D. Nev. Sept. 29, 2017) (transient nature of exotic dancers justified issuing notice via mail, email, and text message); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-3624, 2015 U.S. Dist. LEXIS 90616, at *12 (S.D.N.Y. July 13, 2015) (text message notice was permitted to restaurant workers and "the evidence before the Court suggest[ed] that text messaging [wa]s Defendants' preferred method of employee communication"); *Molina-Torres v. Harris Cnty. Constable Precinct 6*, No. 4:23-CV-01786, 2024 U.S. Dist. LEXIS 71629, at *16 (S.D. Tex. Apr. 19, 2024) ("In order to 'further the remedial purpose of the FLSA,' courts often allow plaintiffs to provide notice through text message, email,

12

and regular mail.") (quotation omitted). Defendants have not identified a single Rule 23 class action where the Court approved the far-reaching relief sought here: issuing a *second* round of notice to class members via text message after the Court-approved notice had already been issued via email and mail and 98.2% of all potential class members received the notice.

Defendants cite *Roes* in support of their argument that low site visits and few clicks on the Exclusion Request form justify a second notice. Mem. at 14. But in that case, only 18.5% or 865 or 4,681 of class members submitted claims forms to receive payments from the settlement fund and there was evidence that "at least 12% of the mailed notices were ultimately determined to be undeliverable—meaning those class members had not received notice." *Roes*, 944 F.3d at 1042, 1046. Here, all but 45 of 2,445 potential class members (1.8%) received the notice, and 786 class members will be receiving a second mailed notice, such that text message notice is unwarranted. *Pollard v Remington Arms Co., LLC* is similarly unpersuasive as there, the class size was approximately 7.5 million, yet mailing addresses were available for just 2,500 individuals, and the court ordered a supplemental notice after just 0.1% of the class submitted claims forms. 896 F.3d 900, 904-05 (8th Cir. 2018) (approving supplemental notice plan consisting of, *inter alia*, a targeted social media campaign, national radio campaign, email, etc.). Because notice was successfully distributed to nearly all potential class members, the Court should reject Defendants' supplemental notice plan.[7]

## C.   Defendants' Supplementation of Witness and Exhibit Lists Was Limited to Reflecting Opt-Outs.

Defendants previously sought, and were granted, the ability to supplement witness and exhibit lists within 30 days after the opt-out deadline to "reflect the identity of opt-outs," i.e., to

---

[7] If a supplemental notice plan is ordered, a finding the Court should not reach, Defendants should bear the cost of the notice.

list as witnesses those who opted out of the class and exhibits related to those individuals. *See* Dkt. 242 at 1; Dkt. 242-1 at 1 (claiming "opt-outs are some of the most important trial witnesses for Defendants' trial presentation"); Dkt. 245 (order "Extending Deadlines for Submission of Defendants' Exhibits and Witness Lists to Reflect Opt-Outs"). Because no class members opted-out of the case during the notice period, Defendants did not supplement either list.

Now, however, Defendants claim that they should be permitted to supplement witness and exhibit lists after any subsequent opt-out period "to reflect case developments emanating from new opt-out periods," in accordance with "the Court's prior order (ECF No. 245)." Mem. at 1, 4, 15-16 (requesting that "Defendants be granted 30 days from expiration of the last applicable opt-out period to supplement witness and exhibit lists"); *see also* Dkt. 285-10 at 2 (proposed order affording Defendants a 30-day period to "to supplement Defendants' witness and exhibits lists"). But the Court did not previously grant such broad relief and limited supplementation to "reflect the identity of opt-outs," per Defendants' request. Dkt. 242 at 1; Dkt. 245. Accordingly, Defendants' attempt to now misconstrue the relief granted by the Court should be rejected.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety.

DATED: July 6, 2026

By: /s/ Daniel Kotchen
Daniel A. Kotchen (PHV10213)
Lindsey Grunert (PHV20124)
KOTCHEN & LOW LLP
1918 New Hampshire Avenue NW
Washington, DC 20009
Telephone: (202) 471-1995
Fax: (202) 280-1128
dkotchen@kotchen.com
lgrunert@kotchen.com

Nitor V. Egbarin, ct05114
Law Office of Nitor V. Egbarin, LLC

14

100 Pearl Street, 14th Floor
Hartford, CT 06103-3007
Tel: (860) 249-7180
Fax: (860) 408-1471
E-mail: NEgbarin@aol.com

*Attorneys for Plaintiffs and the Class*