**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DonRudy Loiseau, Quinton L. Hebron, and Dwayne Small, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Bozzuto's Inc., *et al.*,<br><br>Defendants. | Civil No. 3:22-cv-01485-VAB<br><br>September 29, 2026 |

**RULING AND ORDER ON**
**MOTION FOR ATTORNEYS' FEES AND COSTS (Doc. No. 225)**

The plaintiffs, DonRudy Loiseau and others ("Plaintiffs"), seek an award of attorneys' fees and costs incurred in connection with their Second Motion for Sanctions. (Doc. No. 225; *see also* Doc. No. 150.) For the reasons set forth below, the Court will award them fees and costs, although not in the amount sought. They seek $252,578.94 (Doc. No. 225, at 2), but the Court will award them $94,201.25.

**1. Background**

On March 15, 2024, the Court ordered the defendants, Bozzuto's Inc. and certain of its employees ("Defendants"), to comply fully with the Plaintiffs' Request for Production No. 52. (Doc. No. 78.) That request sought production of electronically stored information ("ESI") relating to several topics, including "gross pay by year" "[f]or each . . . employee who worked [for Bozzuto's] in Connecticut at any point during the relevant time period." (Doc. No. 62-1, at 4.)

The Plaintiffs later uncovered significant and disconcerting non-compliance with that order. (*See* Doc. No. 93, at 2-8) (recounting history). They therefore filed a motion for sanctions

on August 27, 2024. (Doc. No. 92 ("First Sanctions Motion").) After briefing and argument, the Court granted the motion in part by reopening discovery to allow the Plaintiffs to obtain the information that they should have received in the first place. (Doc. No. 107.) It then directed the parties to meet and confer to resolve the Plaintiffs' claim for attorneys' fees and costs by negotiation. (Tr. of Hr'g, Doc. No. 158, at 32:23-33:9); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally . . . litigants will settle the amount of a fee."). On December 5, 2024, the parties reported that they had settled that claim (the "Negotiated Resolution"). Shortly afterward, the Defendants fired their lawyers and replaced them with attorneys from the firm of Duane Morris LLP. (*See* Mots. to Withdraw, Mots. for Admission *Pro Hac Vice*, Doc. Nos. 110-114, 117-120.)

On December 17, 2024, the Plaintiffs took a second Rule 30(b)(6) deposition of Bozzuto's, a second session having been made necessary by the failure of Bozzuto's to comply with Request No. 52 at the time of the first. (Doc. No. 151, at 12.) At that second deposition, the Plaintiffs discovered additional instances of non-compliance by the Defendants. (*Id.*) Moreover, the Defendants continued to produce significant quantities of ESI well after the Negotiated Resolution. (*Id.* at 13.) They also unexpectedly produced declarations from thirty-one current and former employees who had not been disclosed by prior counsel in their Rule 26(a) disclosures. (*Id.*.)

The Plaintiffs filed a second motion for sanctions on January 27, 2025. (Doc. No. 150 ("Second Sanctions Motion").) Reasoning that the Defendants should not be able to make an incomplete production and then use that information at trial, the Plaintiffs sought "preclusion sanctions and an adverse inference jury instruction." (*Id.* at 3.) They also sought an award of "fees and expenses associated with [the] motion," including costs allegedly incurred by their expert witness in revising his report to account for the withheld information. (*Id.*)

After a full round of briefs, the Court heard oral argument on April 16, 2025. (Tr. of Hr'g, Doc. No. 176.) The argument revealed that the Defendants had still not produced a significant amount of ESI that was responsive to Request No. 52. (*See id.* at 33:16-34:16.) Preferring to see the Defendants make a complete production, rather than a partial production followed by the possibility of preclusion or an adverse inference, the Court directed the Duane Morris attorneys to clean up the mess that prior counsel had left for them by, among other things, meeting and conferring about additional ESI search terms and running additional searches. (*Id.* at 33:15-34:8.)

Months of additional work ensued (*see* Doc. No. 181), and by late August the Defendants appeared to be "on their way to a complete, if significantly delayed, production." (Doc. No. 189.) The Court therefore denied the Second Sanctions Motion to the extent that it sought "evidence preclusion or adverse inferences as sanctions, because those are severe sanctions that ordinarily require spoliation or other non-production at a minimum." (*Id.*) But the Court directed the parties to continue reporting on the collection and production process, and it suggested that it would revisit the issues of preclusion and adverse inference if the Defendants did not ultimately make a complete production. (*Id.*) The Court added that "[t]he portion of the motion that sought an award of fees and costs will be held in abeyance until the production is complete" (*id.*), but in keeping with the *Hensley v. Eckerhart* principle, it instructed the parties to continue negotiating that issue.

By early 2026, it appeared that the Defendants' production was complete. (*See* Doc. No. 221) (failing to dispute completeness of production, and identifying no outstanding issues other than fees and costs). But the parties had reached impasse on the Plaintiffs' fee claim. (*Id.*) The Plaintiffs then applied for an award of fees and costs in the amount of $252,578.94, "consisting of $203,525.60 in attorneys' fees . . . $47,765 in expert costs, $701.69 in costs associated with travel, lodging, and food for the hearing . . . and $586.65 for costs associated with the Rule 30(b)(6)

stenographer and deposition transcript." (Doc. No. 225, at 2.) As will be noted below, they attached emails from the parties' negotiations as exhibits to their accompanying memorandum of law. (*E.g.*, Doc. No. 226-6.) The Defendants opposed the application (Doc. No. 240) and, unusually for an attorney fee dispute, the Court held oral argument. (Doc. No. 297.)

At the end of the argument, the Court again encouraged the parties to resolve the dispute through negotiation, as they had done with the First Sanctions Motion. It also provided them with some guidance on the relevant legal principles. Finally, the Court directed the Plaintiffs to submit their time sheets in unredacted form, to be reviewed *in camera* in the event that the parties were unable to resolve their disagreements.

Although the Court has provided the parties with detailed guidance on the applicable legal principles, and although they were able to work out an earlier fee dispute without judicial intervention, they recently reported that they have reached impasse yet again. (Doc. No. 325.) The parties having failed to do so on their own, the Court will now resolve the motion.

## 2. Discussion

### A. Whether Sanctions Should Enter at All

The Defendants first assert that they should not be sanctioned at all (Doc. No. 240, at 7-9), but the Court disagrees. The Defendants argue, in substance, that all their discovery misdeeds were addressed in the First Sanctions Motion and encompassed in the Negotiated Resolution (*id.* at 8), but the record does not support this claim. As the Plaintiffs point out, it was not until the Rule 30(b)(6) deposition on December 17, 2024—nearly two weeks after the Negotiated Resolution—that they learned of additional instances of discovery non-compliance. While it is true that the Defendants' discovery conduct has vastly improved after their change of counsel, it is also true that some of prior counsel's misdeeds (*e.g.*, continuing non-compliance with the order on

Request for Production No. 52; failure to disclose individuals subject to Fed. R. Civ. P. 26(a)(1)(A)(i), *etc.*) had not come to light by the time of the Negotiated Resolution.

The Defendants argue that the Plaintiffs waived their claim by failing to brief it adequately (*id.* at 7-8), but the Court disagrees with this claim as well. The Plaintiffs had briefed the question of their entitlement to fees in their initial memorandum of law at Doc. No. 151, but in their subsequent fee application and brief at Doc. Nos. 225 and 226, they skipped that question and went straight to the question of how much they felt they were owed. They apparently did so because, in settlement discussions, the Defendants appeared to concede the former issue. (*See* Doc. No. 226, at 1.) The Defendants now interpret this omission as a waiver (Doc. No. 240, at 7-8), but they neglect to note that the Plaintiffs had addressed the issue in their earlier brief. (Doc. No. 151, at 29-30.) Moreover, waiver "is the intentional relinquishment . . . of a known right," *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022), and the Plaintiffs clearly did not intend to waive the argument that they were entitled to an award of fees. In short, the Plaintiffs are entitled to such an award; the question is how much.

**B. Reasonable Attorneys' Fees and Costs**

"In this Circuit, an analysis of the reasonableness of a fee request begins with a 'lodestar' calculation." *Cornelio v. Connecticut*, No. 3:19-cv-1240 (JAM) (TOF), 2023 WL 10802701, at *6 (D. Conn. Nov. 28, 2023). In that calculation, the court "'multipl[ies] the reasonable hours expended on the action by a reasonable hourly rate,' which results in a presumptively reasonable fee." *Ortiz v. City of New York*, 843 F. App'x 355, 358 (2d Cir. 2021) (summary order). Because the product of this calculation is only "presumptively" reasonable, "it is still within the court's discretion to adjust the amount upward or downward based on . . . case-specific factors." *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, No. 3:10-cv-60 (JBA), 2012 WL 4092515, at

*1 (D. Conn. Sep. 17, 2012). Thus, "the process is really a four-step one, as the court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award." *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010). The Court will discuss each of the four steps in turn.

***1. Reasonable hourly rate***

In assessing the "reasonable hourly rate" component of the lodestar calculation, the Second Circuit has directed district courts to "bear in mind all of the case-specific variables that [it] and other courts have identified as relevant to the reasonableness of an attorney's fees." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). "The reasonable hourly rate is the rate a paying client would be willing to pay," and in determining that rate, district courts should consider (among other things) the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[1] *Id.* Courts should also "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* A reasonable, paying client also "presum[ably] . . . would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Id.* at 191. Accordingly, "[w]hen an attorney's requested hourly rate is higher than the rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the

[1] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019).

requested rate." *Lin v. La Vie en Schezuan Rest. Corp.*, No. 15-cv-9507 (DF), 2020 WL 1819941, at *2 (S.D.N.Y. Apr. 9, 2020) (citing *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)).

The Plaintiffs are principally represented by the Washington, D.C., firm of Kotchen & Low, and they seek to recover District of Columbia rates. (*See* Aff. of Fees & Costs, Doc. No. 226-1, ¶¶ 13-16.) Specifically, they seek an award based on hourly rates of $920-1,000 for partner Dan Kotchen; $916-996 for partner Daniel Low; $616-680 for associate Lindsey Grunert; and $616 for associate Amanda Burns. (Doc. No. 226-2.) They say that their actual rates are higher, but they agreed to reduce them by twenty percent "to moot any dispute over the rates' reasonableness." (Aff. of Fees & Costs, Doc No. 226-1, ¶ 16.) The Plaintiffs are also represented by local counsel, Attorney Nitor Egbarin, a Hartford solo practitioner, and they seek to recover $370 for each hour of his work. (Doc. No. 226-2, at 15.) Perhaps in part because their local attorney charges $370, the Plaintiffs do not dispute that Connecticut rates are ordinarily much lower than their lead counsel's District of Columbia rates. (*See generally* Doc. No. 226.) Thus, the principal question presented at step one of the lodestar calculation is whether the Court should depart from the so-called "forum rule"—that is, the presumption that a reasonable, paying client "would in most cases hire counsel . . . whose rates are consistent with those charged locally." *Arbor Hill*, 522 F.3d at 190.

The Plaintiffs resist application of the "forum rule" for several reasons, but the Court disagrees with each one. The Plaintiffs first cite cases in which courts eschewed the forum rule when awarding fees as a sanction, rather than under a fee-shifting statute. (Doc. No. 226, at 10-12 (citing, *inter alia*, *Ceglia v. Zuckerberg*, No. 10-cv-568A(F), 2012 U.S. Dist. LEXIS 18438, at *28 (W.D.N.Y. Feb. 14, 2012)).) But these cases say only that the court has *discretion* to decline to apply the forum rule; they do not compel that result. *E.g.*, *Ceglia*, 2012 U.S. Dist. LEXIS 18438,

at *23-24 ("[I]n calculating . . . attorney's fees awarded as a sanction, the court is not required to apply the forum rule . . . rather, the court has discretion to use out-of-district rates . . . ."); *see also Biondo v. Kaleida Health*, No. 15-cv-362G(F), 2016 U.S. Dist. LEXIS 63001, at *3 (W.D.N.Y. May 12, 2016) ("Where a plaintiff elects to retain out-of-town counsel located in a market of substantially higher hourly billing rates than those prevailing in the forum court's geographical area, the court has discretion to utilize the billing rates of the retained counsel's market rather than those prevailing in the forum's area."). Moreover, it is unclear whether this line of authority survives *Kyros Law P.C. v. World Wrestling Entertainment,* as the Defendants point out. 78 F.4th 532, 548 (2d Cir. 2023) (observing "no reason why the [forum] rule should not presumptively apply" in both the sanctions and fee-shifting contexts).

The Plaintiffs then argue that even if the forum rule applied, they have overcome its presumption in favor of forum rates (Doc. No. 226 at 12-17), but the Court disagrees with this claim as well. The Plaintiffs say that their District of Columbia attorneys possess special expertise in pattern-and-practice discrimination litigation, and that their record of success justifies high, out-of-district rates. (*Id.*) And, to be sure, the Kotchen & Low attorneys achieved some notable successes in this very case when they repelled the Defendants' summary judgment motion and obtained class certification. But in this motion, they do not seek an award of fees incurred in connection with a difficult class certification motion, or a complicated fight over pattern-and-practice evidence. Rather, they seek an award of fees in connection with a relatively uncomplex discovery dispute, and such a dispute does not justify rates approaching $1,000 per hour. *See, e.g.*, *Found. Cap. Res., Inc. v. Udo-Okon*, No. 3:21-cv-1278 (JAM) (TOF), 2022 WL 17413950, at *5 (D. Conn. Dec. 5, 2022) (awarding an hourly rate of $300 to an attorney with twenty-seven years of practice, and significant expertise in complex commercial law matters, because her standard

rate was "too high for the work required by the two [discovery] motions" at issue); *Shea v. Sieunarine*, No. 3:21-cv-673 (JCH) (TOF), 2022 WL 3359155, at *3 (D. Conn. Aug. 15, 2022) (reducing hourly rate of partner-level attorney with thirty years' experience from $400 to $300 because the discovery motion "presented no novel and difficult questions, and it required no special level of skill to perform the legal service properly") (internal quotation marks, brackets, and ellipsis omitted). Expressing no view on the hourly rates that Kotchen & Low might recover if the Plaintiffs won a complex trial and obtained an award of fees, the Court concludes that even their discounted rates are too high for this discovery dispute, because it is unpersuaded by their argument that resolution of this dispute required their special expertise.

The Plaintiffs next cite Duane Morris's hourly rates as evidence of the reasonableness of their own counsel's (Doc. No. 226, at 13), but courts have rejected similar "fee parity" arguments. In *Chambless v. Masters, Mates & Pilots Pension Plan*, for example, the Second Circuit observed that "the prevailing market rate test does not mandate equal fees for opposing counsel," in part because plaintiffs and defendants often have "entirely different stakes in the litigation." 885 F.2d 1053, 1059 (2d Cir. 1989). In that case, Chambless sued merely to recover his own benefits under his pension plan, but the plan had to be concerned with the potential *res judicata* effect of his case on future disputes. *Id.* Thus, "even though Chambless' and the Plan's attorneys were arguing about two sides of the same coin, the difference in the precedential value of the case to their respective clients could vary markedly and could well justify a divergence between the fees they charged." *Id.*; *cf. Doe by and Through Doe v. East Lyme Bd. Of Educ.*, No. 3:11-cv-291 (JBA), 2019 WL 1397455, at *7 (D. Conn. Mar. 27, 2019) (rejecting argument that "fee parity" required a "reduction in Plaintiff's counsel's hours" to match defendant's counsel's). In this case, as in *Chambless*, the Plaintiffs and the Defendants would seem to have different stakes in the litigation,

and Duane Morris's hourly rates therefore bear little relevance to the reasonableness of Kotchen & Low's.

Having carefully considered the matter, and having considered the *Johnson* factors, the Court concludes that $500 is a reasonable—indeed, generous—hourly rate for partner work on this discovery dispute (except for Attorney Egbarin, who does not seek more than $370), and $375 is a reasonable and generous hourly rate for associate work. *See, e.g.*, *Prudential Ins. Co. of Am. v. Kowalski*, No. 3:21-cv-541 (VAB), 2024 WL 4653136, at *13 (D. Conn. Nov. 1, 2024) (surveying cases and noting in-district hourly rates of $450-665 for partners and $342-375 for associates, and further noting that rates at the higher end of that range were justified by the need for "specific expertise," suggesting by negative implication that they are not justified when the need for such expertise is not present); *Found. Cap. Res. Inc.*, 2022 WL 17413950, at *5 (awarding $300 to a partner who had practiced for twenty-seven years and chaired the Connecticut Bar Association committee in her field of specialty, in part because the discovery dispute did not call for application of that expertise). Finally under this heading, the Court concludes that $300 is an appropriate rate for each hour reasonably expended by the Plaintiffs' expert witness, Dr. David Lang.

***2. Reasonable hours***

With respect to the reasonable number of hours, it is well established that a party who prevails on a motion to compel may not recover, under Rule 37, attorneys' fees that would have been incurred anyway in the normal course of discovery. *See, e.g.*, *Learning Care Grp., Inc. v. Armetta*, No. 3:13-cv-1540 (VAB), 2015 WL 5194082, at *3 (D. Conn. Sep. 2, 2015) ("The Court agrees that the bills do not appear to reflect only work done 'making' the Plaintiffs' Motion to Compel and will not award the full amount of fees requested for that reason."); *Penta v. Costco Wholesale Corp.*, No. 14-Civ.-3587 (DLI) (VMS), 2016 WL 1171612, at *5 (E.D.N.Y. Mar. 25,

2016) ("[T]he Court will not reimburse Defendants for attorneys' fees that would have been incurred in the normal course of discovery, such as the fees associated with obtaining Plaintiff's medical records or fees associated with reviewing other discovery and strategizing about the case."). Moreover, when a fee application contains surplus hours, the court is not obliged to "conduct[ ] a laborious, entry-by entry analysis" of the lawyer's time records. *Found. Cap. Res. Inc.*, 2022 WL 17413950, at *7. Rather, it "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *McCullough v. World Wrestling Ent., Inc.*, No. 3:15-cv-1074 (JAM), 2021 WL 4472719, at *4 (D. Conn. Sep. 30, 2021). As noted above, "[t]he Supreme Court has warned that 'the determination of fees should not result in a second major litigation,'" and it has therefore "instructed that the goal of an attorney's fees award is 'to do rough justice, not achieve auditing perfection.'" *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

The Court has read every entry in the Plaintiffs' counsel's unredacted time sheets, and it concludes that their fee request overwhelmingly reflects work they would have had to do anyway, even if the Defendants had not engaged in discovery misconduct. Take, for example, Associate Lindsey Grunert's submission. The Plaintiffs say that she spent 239.9 hours on recoverable work (Doc. No. 226-2, at 11, 13), but her time sheet contains numerous entries for reviewing documents; speaking and corresponding with firm partners about them; preparing for depositions; reviewing transcripts of depositions; and negotiating search terms with her opponent—all things that the Plaintiffs would have had to do anyway. At oral argument, Attorney Grunert attempted to explain why much of this work was necessitated by the need to go through the discovery materials twice on account of the defendant's misconduct, but the Court found that explanation unpersuasive. While it is true that the Defendants initially produced only base wage data, and that they then

produced ESI on the other components of gross pay (e.g., incentive pay) only in later installments, the Plaintiffs have failed to persuasively explain how this sequence made their review materially more difficult, let alone to the degree reflected in their quarter-million-dollar fee request. Furthermore, Attorney Grunert's time sheet reflects almost a hundred hours' worth of work on the plaintiffs' sanctions motion and reply brief, and that is grossly excessive. Acknowledging that the Plaintiffs are entitled to recover for hours their counsel reasonably spent in negotiating with the Defendants and bringing the motion, *see Donovan v. CSEA Loc. Union 1000*, 784 F.2d 98, 106 (2d Cir. 1986), and exercising its discretion to eschew a "laborious, entry-by-entry analysis" of time records in favor of "a reasonable percentage" reduction, the Court concludes that only fifty percent of the hours on Attorney Grunert's time sheet can be regarded as non-excessive and reasonably related to work that the Plaintiffs would not have had to do anyway.

The other timekeepers' time sheets also exceed the bounds of reasonableness, although not to quite the same degree. For example, partner Dan Kotchen says that he spent 53.4 hours working on tasks related to the Second Sanctions Motion and fee application. (Doc. No. 226-2, at 3.) His time sheet includes entries for reviewing expert analyses, conferring with other firm lawyers, and other tasks that would have been required even in the absence of discovery misconduct, and it also contains nearly fifteen hours for reviewing and commenting upon the briefs that Attorney Grunert put nearly a hundred hours into. But unlike Attorney Grunert's time sheet, Attorney Kotchen's contains few if any entries for reviewing documents that would have had to be reviewed anyway. He will therefore be awarded seventy, rather than fifty, percent of his hours. Partner Daniel Low seeks 10.3 hours (Doc. No. 226-2, at 4), most of which is for reviewing the same briefs. Because he does not seek to recover for as much internal meeting-and-conferring as his colleagues, the Court will award him a higher percentage, eighty percent. Associate Amanda Burns says that she

did 6.5 hours' worth of recoverable work (Doc. No. 226-2, at 14), but most of this was in connection with the same brief that the other attorneys put more than a hundred hours of work into; the Court will likewise award her eighty percent of her hours. Local counsel Nitor Egbarin's 5.5 hours will be reduced to 1.3, because the other 4.2 is composed of a single "block-billed" entry, and courts generally reject fee claims that are based on such entries. *E.g.*, *Wei v. Sichuan Pepper, Inc.*, No. 3:19-cv-525 (JBA) (TOF), 2022 WL 385226, at *19 n.8 (D. Conn. Jan. 17, 2022).

Finally, the Court will reduce Dr. Lang's hours by fifty percent, from 159.85 (Doc. No. 226-3) to 79.93. The Plaintiffs say that they are "only seeking costs associated with Dr. Lang's analysis of the belatedly-produced pay data and second sanctions motion," and they have "removed from [his] invoices . . . costs incurred that are related to class certification, *Daubert*, or summary judgment." (Doc. No. 226-1, ¶ 21.) But they do not dispute that Dr. Lang would have had to review that pay data even if it had been produced on time, and his invoices are not sufficiently detailed to permit an entry-by-entry determination of the *marginal* cost incurred by the production delay. Put differently, while the Court has no trouble imagining that it took Dr. Lang a long time to analyze and explain the volume of pay data that the Defendants ultimately produced, the Plaintiffs provided no persuasive reason for supposing that it took him more than two full work weeks *longer* to review that data merely because he had to do so in two installments rather than one. Exercising its discretion "simply to deduct a reasonable percentage of the number of hours claimed" in pursuit of "rough justice" rather than "auditing perfection," *McCullough*, 2021 WL 4472719, at *4, the Court concludes that it would be appropriate to reduce his hours by fifty percent. *See, e.g., Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318 (GBD)(BCM), 2019 WL 11824921, at *6 (S.D.N.Y. May 24, 2019) (reducing hours by a blanket

percentage rate where applicant's invoices lacked enough detail to separate compensable tasks from non-compensable tasks).

### *3. Calculating the presumptively reasonable fee*

At the third step of the analysis, courts multiply the reasonable hourly rate for each timekeeper by the number of hours that he or she reasonably expended on the matter. In this case, that calculation works out as follows:

| Timekeeper | Reasonable Hourly Rate | x Reasonable Number of Hours | = Presumptively Reasonable Fee |
|---|---|---|---|
| Dan Kotchen | $500 | 37.38 | $18,690 |
| Daniel Low | $500 | 8.24 | $4,120 |
| Lindsey Grunert | $375 | 119.95 | $44,981.25 |
| Amanda Burns | $375 | 5.2 | $1,950 |
| Nitor Egbarin | $370 | 1.3 | $481 |
| David Lang | $300 | 79.93 | $23,979 |
| Total | | | $94,201.25 |

The Plaintiffs will no doubt observe that the Defendants offered more in their settlement discussions (*see* Doc. No. 226, at 1), but two things should be said about this. First, under the facts of this case, those negotiations should not have been placed before the Court. While it can sometimes be proper to introduce settlement negotiations for purposes other than proving liability, in this case they were evidently submitted for the purpose of persuading the Court that the Defendants were liable at least to the extent of their last offer. (*See* Doc. No. 226, at 1); *cf. Walczak v. Pratt & Whitney*, No. 3:18-cv-563 (VAB), 2019 WL 145526, at *3 (D. Conn. Jan. 9, 2019) (striking settlement offer from complaint under Rule 12(f) because the allegation could "only serve to later implicate liability," and it militated against "the public policy favoring compromise and

settlement of disputes"). Second, even if the Court were to consider the negotiations, it is well established that a party's last offer does not set a floor on a judicial award if the parties reach impasse and the Court is constrained to decide the motion. *See Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 352-53 (2d Cir. 2009) (holding that a court cannot use "a party's provisional concessions uttered in an unsuccessful attempt to reach a settlement agreement to support a finding on the merits of the dispute adverse to that party"). When the parties fail to settle a fee dispute, it is not the Court's role to mediate within the bracket established by their final proposals. Rather, its role is to decide what fee would be reasonable under the applicable law and the facts of the case.

***4. Adjustments and costs***

As noted above, the first three steps of the analysis establish only a "presumptively" reasonable fee. *Ortiz*, 843 F. App'x at 358. "[I]t is still within the court's discretion to adjust the amount upward or downward based on . . . case-specific factors." *Tyco Healthcare Grp. LP*, 2012 WL 4092515, at *1. In this case, however, neither side seeks any adjustments for any factors that are not considered at steps one and two (*see generally* Doc. Nos. 226, 240), and the Court observes no reason to make any such adjustments. Thus, the "presumptively reasonable" fee is also the reasonable fee. *E.g.*, *Cornelio*, 2023 WL 10802701, at *12 (adopting the presumptively reasonable fee as the reasonable fee when there was no reason to make any adjustments at step four).

Finally, the Court will award the Plaintiffs $1,287.34 in costs. They have documented $701.69 in expenses associated with attendance at the April 16, 2025, hearing (Doc. No. 226-9), and the Court finds these expenses reasonable. They also seek to recover the $586.65 stenographer fee for the second Rule 30(b)(6) deposition (Doc. No. 226-10), to which the Defendants object on the ground that it would have been incurred even in the absence of their first lawyers' discovery

misconduct (Doc. No. 240, at 10), but the Court disagrees and concludes that that expense was made necessary only by the Defendants' delay in making a full production.

**3. Conclusion and Order**

The Court has carefully considered all claims and arguments made by the parties, and all authorities cited by them, even if not expressly referenced herein. For the foregoing reasons, the Plaintiffs' Motion for Attorneys' Fees and Costs Associated with Plaintiffs' Second Motion for Sanctions (Doc. No. 225) is granted in part and denied in part. It is granted to the extent that it seeks an award of $94,201.25. It is denied to the extent that it seeks an award beyond that amount. The Defendants are directed to pay the Plaintiffs the sum of $94,201.25 by October 28, 2026.

This is not a recommended ruling. Rather, it is a ruling and order by a Magistrate Judge on a "nondispositive motion[] . . . relating to discovery," D. Conn. L. Civ. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b); *Innis Arden Golf Club v. Pitney Bowes*, No. 3:06-cv-1352 (JBA), 2012 WL 1108527, at *1 (D. Conn. Mar. 30, 2012). "It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a)." *Magar v. Tika Indian Rest. LLC*, No. 3:24-cv-1564 (SFR) (TOF), 2025 WL 1381876, at *5 (D. Conn. May 13, 2025).

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge